UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

N'Daya Lee, individually and as the Administratrix of the Estate of Diane Parker-Reed,

          Plaintiff,

-against-

Incorporated Village of Hempstead, County of Nassau, Sgt. Kevin Galvin, Claudia Serrano, Lt. Patrick Cooke, Sgt. John Zoll, Lt. Edward Hayman, P.O. Vito Buccellato, P.O. Christopher N. Cohen, Sgt. Ivory G. Dixon, P.O. Jack Guevrekian, P.O. Edward P. Mulhearn, P.O. Roman Pettway, Jr., P.O. Frane Reado, P.O. Leroy D. Ridley, Det. Donald J. Bittner, Deputy Sheriff John M. Flanagan, John and Jane Does 1-10, and John and Jane Does 11-20,

          Defendants.

**Docket No.: 14-CV-2853 (ADS)(GRB)**

---

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO AMEND COMPLAINT TO ADD DEFENDANTS**

                  LASASSO LAW GROUP PLLC
                  30 Wall Street, 8th Floor
                  New York, New York 10005
                  *Attorneys for Plaintiffs*

         By: Mariel LaSasso, Esq.
            (212) 421-6000
            mariel@lasassolaw.com

Plaintiffs N'Daya Lee, individually and as the Administratrix of the Estate of Diane Parker-Reed ("Plaintiffs"), respectfully move this Court for an order pursuant to the Federal Rules of Civil Procedure Rule 15, or in the alternative, pursuant to the Civil Practice Law and Rules § 1024, permitting Plaintiffs to amend their Complaint to add as defendants in this matter Lt. Richard A. Holland and Det. Darrell Aiken. The proposed Amended Complaint is attached hereto as Exhibit "1". Defendant Incorporated Village of Hempstead has declined to consent to the proposed amendment.

Plaintiffs' proposed Amended Complaint is attached as Exhibit 1 to the Declaration of Mariel Lasasso dated May 31, 2017. The Amended Complaint maintains the counts and allegations against the defendants from the original Complaint, but seeks to add as new defendants Lt. Richard A. Holland ("Holland") and Det. Darrell Aiken ("Aiken") based upon information that has been obtained since the original Complaint was filed through Holland's deposition testimony. This Amended Complaint further seeks to add new facts relevant to Holland and Aiken contained in paragraphs 34-36, 115-116, 119-121, 124-125, 128, 142-154, 164, 187-188, 236-237, 261, 392-393. Following previous discussions and a follow-up email exchange on May 19, 2017, counsel for Defendant Incorporated Village of Hempstead ("Village") advised that Village does not consent to the proposed amendment and thinks that the issue is best handled through motion practice. Accordingly, Plaintiffs seek the Court's leave to amend, which should be granted for the reasons below.

## STATEMENT OF FACTS

This is a federal civil rights action against the defendants County of Nassau, Village of Hempstead, and individual police officers arising from their inadequate police response to the

domestic violence situation facing decedent Diane Parker-Reed ("Diane") and plaintiff N'Daya Lee ("N'daya") leading to Diane's murder on February 7, 2013. On December 24, 2013, Plaintiffs made requests to Defendants under the Freedom of Information Law seeking *inter alia* police reports, radio runs, 9-1-1 calls, investigative files, and policies and procedures related to the factual allegations underlying the claims in this action. A copy of these FOIL requests are annexed hereto as Exhibit "2". These requests were categorically rejected, and the Village defendants provided no documents. Plaintiffs timely served a Notice of Claim on the Municipal Defendants on May 3, 2013, which set forth the relevant facts and alleged that Defendants are liable for Diane's murder under various federal and state law theories.

On May 6, 2014, Plaintiffs timely commenced this action by filing a Complaint alleging various theories of recovery, including violations of Diane's rights under 42 U.S.C. § 1983, and state law theories of liability. At that time, Plaintiffs was unaware of the identity of all defendant police officers. Therefore, the original complaint identified various defendants as "John Doe." A copy of the Original Complaint is annexed hereto as Exhibit "3". The County of Nassau filed its Answer on June 10, 2014, and the Village Defendants filed their Answer on June 16, 2014. Subsequently, this litigation was stayed on defendants' application pending the resolution of the related criminal case until March 2015.

Thereafter, Defendants failed to participate whatsoever in discovery through late December 2015. As a result, during a conference held before Judge Brown on December 16, 2015, Defendants requested a do-over of all deadlines and threw themselves on the mercy of court. Following this proceeding, Judge Brown granted extensions of time due to the Defendants' noncompliance with discovery orders, the extent and nature of discovery necessary, and to accommodate the numerous depositions required to prosecute this case. Background of

defendants' stonewalling plaintiffs' discovery efforts are detailed, *inter alia*, in plaintiffs' letters requesting court intervention, extensions of time and plaintiffs' motions to compel on the docket (see, e.g., DE 22, 24, 56, 66). The Village defendants have caused further delays in these proceedings by substituting their attorneys twice.

By electronic order dated December 1, 2016, the Court granted Plaintiffs' letter motion to extend pre-trial deadlines. Accordingly, Plaintiffs' time to join new parties or amend pleadings was extended to May 31, 2017. On February 27, 2017, Plaintiffs filed a motion to disqualify village counsel on the basis of an apparent conflict of interest. On May 3, 2017, Judge Brown denied this motion as moot. As such, this application is timely.

Holland and Aiken are employees of Defendant Village's Hempstead Police Department ("HPD"), whose connection to this lawsuit as defendants was revealed through discovery. At his December 8, 2016 deposition, Holland provided information that was previously unknown to Plaintiffs. A copy of relevant portions of Holland's testimony is attached hereto as Exhibit "4". He testified that he enlisted his best friend Aiken, to conduct a purported ongoing investigation into Reed's petty drug-dealings. Exhibit "4," at 150-154, 200-207, 215-224, 353-354. According to Holland, Aiken and other HPD investigators performed stops on Reed, and enlisted and utilized the assistance of confidential informants in their investigation. *See id.*, at 151-152. These stops resulted in no seizures or arrests of Reed. *See id.* Village's counsel has advised that Holland's information regarding his sources and this alleged drug investigation is not supported by a single report or any other record held by HPD. The record supports that, because of personal motives, Holland and Aiken formed a private police posse which harassed Reed who they viewed as merely a neighborhood "punk" who "talked a lot, but never had any action to

back up what he claims to have done or maybe the confrontational person that he wants to come off as." *See id.*, 148-149.

Holland testified to his life-long relationship with Diane, how they met as children through their families, and how that childhood friendship grew into a lifelong love affair, which included a sexual relationship that ran on and off for several decades. *See id.*, 97, 111-115. Holland's intimate relationship with Diane extended to being in a surrogate-father type role with her daughter, N'Daya, who referred to Holland as "pop" or "pops." *See id.*, 97, 111. Holland was aware of Diane's abusive marriage to Reed and that Diane secretly fled to a safe-house in November 2012, where she lived until one week before her murder, and he planned to assist Diane with selling her home so that she could get away from Reed. *See id.*, 87-90, 98-100. Holland spoke to and saw Diane while she was in hiding. *See id.*, 87-89. During the week of her murder, in addition to the numerous interactions with Diane via text and phone, Holland disclosed that he also saw Diane in person. *See id.*, 184-193, 350-351.

Holland testified that, aside from Aiken, he did not discuss with his colleagues the depth or extent of his relationship with Diane, the domestic violence situation in her home, or Reed's firearm. *See id.*, 150-154, 164-165, 200-207, 215-224, 323-324, 353-354. When questioned as to why he didn't do anything, Holland's position was that all the information he ever received was while he was off-duty. *See id.*, 352. Significantly, Holland revealed at his deposition that there were rumors in the community that Diane was killed because of her relationship with Holland. *See id.*, 205 ("they thought it was me that [Diane] was murdered over.") Holland testified that he was aware that Reed was extremely jealous of him. *See id.*, 200, 235-237. Diane told Holland that all she had to do to get "Lenny" angry was to say Holland's name. *See id.*, 235, 237 ("I knew that he was jealous. She told me that he was jealous[.]")

Stemming from Holland's deposition, there are material questions regarding the authenticity, manner, and motive for Holland and Aiken's alleged drug investigation into Reed. There is also a material question of whether these undocumented stops of Reed—resulting in no arrests or seizures—combined with the inadequate formal police response to the domestic violence situation aggravated or emboldened an already emotionally unstable and violent Reed to kill Diane. Holland's admitted disregard for information he was receiving from N'Daya regarding Reed's violence, gun and drugs in her home in favor of an allegedly unsuccessful drug investigation conducted by Aiken reflects a glaring and deadly conflict of interest, which must be put in front of a jury in connection with Diane's death. *See, e.g.*, 153-154 ("I wouldn't use solely N'Daya's information … because I would not want to get her personally involved."); 223-224 (When asked whether N'Daya told him that Reed kept his drugs in the house, "I am not saying that never happened, because knowing N'Daya, I am sure that it happened … she was passionate about getting [Reed] locked up."); 353 (Q: [Y]ou knew that he had possessed a weapon, correct, prior to her being killed with it? A: I knew that N'Daya said there was a gun, yes.)

The claims to be asserted against Holland and Aiken relate back to the original complaint. With the addition of Holland and Aiken, Plaintiffs will be able to seek full satisfaction and ascertain the full extent of damages owed to Plaintiffs by the Village.

## ARGUMENT

**PLAINTIFFS HAVE MET THE STANDARD FOR OBTAINING LEAVE TO FILE AN AMENDED COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE RULE 15, OR IN THE ALTERNATIVE, CIVIL PRACTICE LAW AND RULES § 1024**

Pursuant to Federal Rule of Civil Procedure 15 (a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." *See also Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227

(1962). Federal Rules of Civil Procedure Rule 20 provides that a person may be joined as a defendant if "any right or relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction occurrence, or series of transactions or occurrences, and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. Rule 20 (a)(2)(A), (B). Finally, Fed. R. Civ. P. Rule 21 provides that "[p]arties may be . . . added . . . on motion of any party . . . at any stage of the action and on such terms as are just."

In the instant matter, Plaintiffs seek to add parties that Plaintiffs did not know had to be named as defendants in the action when the Original Complaint was filed. "Amended pleadings that meet the requirements of Rule 15(c) are considered to 'relate back' to the date of the original complaint." *Hogan v. Fischer*, 738 F.3d 509 (2nd Cir. 2013) (internal citations omitted).

Under Rule 15(c)(1)(C), the amended complaint relates back when (1) the claim arose from conduct alleged in the original complaint; (2) the proposed party has notice such that it will not be prejudiced in maintaining its defense; (3) the proposed party "should have known that, but for a mistake of identity, the original action would have been against it; and (4) the second and third criteria are fulfilled within 120 days of the filing of the original complaint, and . . . the original complaint [was] filed within the limitations period." *Id.*, at 517.

In the alternative, Rule 15(c)(1)(A) provides that the amended complaint relates back when "the law that provides the applicable statute of limitations allows relation back." *See, id.* (internal citations omitted). Therefore, under New York Civil Practice Law and Rules § 1024, John Doe substitutions are permitted *nunc pro tunc* if plaintiff exercises due diligence to identify the defendant by name before the statute of limitations runs, and the John Doe is described "in

such form as will fairly apprise the party that [he] is the intended defendant." *See Bumpus v. N.Y.C.T.A.*, 66 A.D.3d 26, 883 N.Y.S.2d 99, 104 (2nd Dept. 2009).

Here, Plaintiffs meet the requirements for relation back under Rule 15(c)(1)(C) and Rule 15(c)(1)(A). As to Rule 15(c)(1)(C), the claims against Holland and Aiken arise out of the conduct set forth in the original Complaint; it is reasonable to believe that within 120 days of filing the original complaint, Holland and Aiken received constructive notice of this action and will not be prejudiced in maintaining their defense given that the Village Defendants appeared in the action within 120 days of the filing of the Original Complaint, their HPD employment, close relationships and/or connections with Diane and Reed; and that within 120 days there was a mistake of identity in that Plaintiffs did not know prior to their depositions that Holland and Aiken must be named as defendants in this action. It is reasonable to believe that Holland's admitted efforts not to leave a paper trail regarding his and Aiken's harassment of Reed and then to hide the true nature of his relationship with Diane from his employer and colleagues were designed to avoid potential liability to him and Aiken that could arise from their actions.

In the alternative, under CPLR § 1024, Plaintiffs' investigation into the identity of the "John Doe" Defendants was stymied as Defendants rejected Plaintiffs' pre-suit FOIL request, the litigation was stayed pending the outcome of the criminal case against Reed, and Defendants' stonewalling in providing discovery resulted in depositions commencing only in late 2016. Holland and Aiken do not appear on any police reports in this action and their involvement in an undocumented parallel investigation could not be discovered without Holland's testimony as no other witness or document reflects its existence. Moreover, Chief McGowan testified that Holland was interviewed by the administration regarding Diane following Diane's death.

Neither the contents of this discussion, nor the names Holland or Aiken, appear in the official file relating to HPD's internal investigation into the circumstances leading to Diane's death.

Nonetheless, Plaintiffs' time to join new defendants and amend the complaint was extended by order of the court. Further, the description of the "John Doe" defendants in the Original Complaint is sufficient to apprise Holland and Aiken that they are intended defendants. Plaintiffs described the John Does as "police officers, detectives . . . servants, agents, employees and/or representatives of VILLAGE. . ." Plaintiffs further alleged that Diane and Reed had personal relationships with members of the HPD, and that one of the men who changed the locks on the door of her home before she returned home from a safe house was known to her. As for Aiken's role, that is newly discovered evidence, which could not have been previously discovered without Holland's testimony.

In the interests of justice and judicial economy, all allegations should be properly before the Court as set forth in Plaintiffs' proposed Amended Complaint. With that, the action can more effectively proceed on the merits.

There will be no undue prejudice to Defendants by virtue of the proposed amendment. Whether prejudice will occur includes assessing whether permitting the amendment would result in additional discovery, cost, and preparation to defend against new defendants. Defendants cannot be prejudiced, and cannot be caught off guard, by the addition of Holland and Aiken given that Defendants' counsel were present for Holland's deposition and the HPD conducted its own internal investigation as to the circumstances surrounding Diane's murder. The proposed amended complaint does not set forth any new claims, or raise any new theories of liability.

Further, Plaintiffs' request to file an Amended Complaint is not futile. Plaintiffs allege sufficient facts to state a claim for relief that is facially plausible. As such, denying leave to amend on the ground of futility would be improper.

## CONCLUSION

For the foregoing reasons, Plaintiffs N'Daya Lee, individually and as the Administratrix of the Estate of Diane Parker-Reed request that the Court grant Plaintiffs' motion for leave to file the proposed Amended Complaint.

Respectfully submitted this 31st day of May, 2017.

LASASSO LAW GROUP PLLC

By: /S/ Mariel LaSasso
Mariel LaSasso (ML9936)
*Attorneys for Plaintiffs*
30 Wall Street, 8th Floor
New York, New York 10005
Tel. (212) 421-6000
Fax (212) 421-6006
mariel@lasassolaw.com
